In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1836

CHESTER O'QUINN,

*Petitioner-Appellant,*

*v.*

TOM SPILLER,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 12-cv-00746-DRH-CJP — **David R. Herndon**, *Judge.*

ARGUED MAY 28, 2015 — DECIDED NOVEMBER 25, 2015

Before FLAUM, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* In late October 1997, Chester O'Quinn was charged in Illinois state court with murdering his girlfriend's one-year-old daughter. Forty-two months later his case proceeded to trial and a jury found him guilty. After exhausting his state appeals, O'Quinn filed a federal habeas petition under 28 U.S.C. § 2254 raising multiple claims of constitutional error. Only one is relevant here: O'Quinn contends the pretrial delay violated his Sixth Amendment

right to a speedy trial. The district court denied the habeas petition but granted a certificate of appealability on this single issue.

On O'Quinn's direct appeal, the Illinois Appellate Court found the 42-month delay presumptively prejudicial but nonetheless rejected his speedy-trial claim after concluding that the delay was attributable to continuances requested by his lawyer and did not impair the defense. That was a reasonable application of *Barker v. Wingo*, 407 U.S. 514 (1972), the controlling Supreme Court precedent for Sixth Amendment speedy-trial claims. Accordingly, we affirm the denial of habeas relief.

## I. Background

On October 31, 1997, O'Quinn was arrested and charged with first-degree murder for shaking his girlfriend's thirteen-month-old daughter to death. On November 5 his counsel filed a speedy-trial demand. Between his arrest and trial, however, there were 28 continuances, 23 of which were requested solely by O'Quinn's counsel. The trial finally began on April 2, 2001, three years and five months after O'Quinn was charged.

Twice during this pretrial delay O'Quinn sent pro se letters to the court complaining that his counsel had requested the continuances against his wishes. O'Quinn's letters sought removal of his counsel and reasserted his demand for a speedy trial. The record does not show whether his counsel, the court, or the prosecutor responded to these letters in any way.

A jury convicted O'Quinn and he was sentenced to 70 years in prison. On direct appeal he argued, among other things, that the long pretrial delay violated his Sixth Amendment right to a speedy trial. Applying the test established in *Barker*, the Illinois Appellate Court determined that because O'Quinn's counsel was responsible for the delay, it was attributable to O'Quinn himself. *People v. O'Quinn*, 791 N.E.2d 1066, 1071–72 (Ill. App. Ct. 2003). The state court also concluded that the delay did not prejudice O'Quinn's defense. *Id*. The Illinois Supreme Court denied leave to appeal.

After exhausting state post-conviction remedies, O'Quinn petitioned for federal habeas relief under § 2254. He raised 11 claims, including a reprise of his Sixth Amendment speedy-trial claim. The district judge considered and rejected each argument, but he also certified the speedy-trial issue for appeal. O'Quinn appealed, and we appointed counsel to assist him.[1]

## II. Discussion

As we've noted, the sole issue on appeal is whether O'Quinn's Sixth Amendment right to a speedy trial was violated. We're not concerned, for example, with whether the numerous continuance requests by O'Quinn's trial attorney amounted to ineffective assistance of counsel. The scope of our review is further limited by the deferential standard for federal review of state-court convictions under § 2254. We

---

[1] The court thanks Thomas L. Shriner, Jr., David J.B. Froiland, and Ryan N. Parsons, of Foley & Lardner LLP, for accepting the pro bono appointment. They have ably discharged their duties.

ask only whether the Illinois Appellate Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

The right to a speedy trial is guaranteed by the Sixth Amendment,[2] and the Supreme Court's decision in *Barker* provides the framework for evaluating claimed violations of the right. The Court in *Barker* identified four factors that bear on the question whether a particular defendant has been deprived of the right: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530. No factor is "a necessary or sufficient condition to the finding of a deprivation of the right." *Id.* at 533. Rather, "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* This ad hoc, fact-sensitive balancing test gives state courts significant latitude to reach reasonable decisions based on the specific circumstances of each case. *See Vermont v. Brillon*, 556 U.S. 81, 91 (2009) ("[T]he balance arrived at in close cases ordinarily would not prompt this Court's review … .").

---

[2] In relevant part, the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial … ." U.S. CONST. amend. VI. The Sixth Amendment's guarantee of a speedy trial in all criminal prosecutions is a fundamental right incorporated against the States by the Fourteenth Amendment. *See Klopfer v. North Carolina*, 386 U.S. 213 (1967).

The first factor in the *Barker* test is the length of the pretrial delay. This is a double inquiry. First, the length of the delay operates as a trigger—a delay longer than one year triggers the full *Barker* analysis. Second, the length of the delay is an independent factor—the longer the delay, the more the presumption of prejudice against the defendant intensifies. *See Doggett v. United States*, 505 U.S. 647, 652 (1992). Here, the Illinois Appellate Court correctly recognized that the 42-month delay met the trigger and proceeded to apply the full *Barker* analysis. *O'Quinn*, 791 N.E.2d at 1071–72.

*Barker*'s second factor examines the reasons for the delay. This obviously is a highly case-specific inquiry, but *Barker* established a few general principles. 407 U.S. at 531. For example, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Id.* At the other end of the spectrum, "[a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily[,] … [and] a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.*

O'Quinn argues that his case falls somewhere in the middle of this spectrum because the State was negligent in allowing the 28 continuances. This argument overlooks the basic principle that the actions and decisions of defense counsel are attributable to the defendant, *see Brillon*, 556 U.S. at 92, and in O'Quinn's case almost all of the delay resulted from continuances requested by his own lawyer. O'Quinn apparently disagreed with his attorney's continuance requests, but that doesn't transfer the responsibility for the delay to the State. Unless the State is responsible for the delay

in bringing the defendant to trial, there can be no speedy-trial violation. *Id*. at 93–94.

O'Quinn correctly notes that the Illinois Appellate Court mistakenly attributed the *entire* period of delay to the defense. The court stated that "[t]he record clearly establishes that defense counsel caused *all* the pretrial delay, and therefore, the delay must be attributed to [the] defendant." *O'Quinn*, 791 N.E.2d at 1073 (emphasis added). As the parties now agree, 156 days of delay—approximately five months of the 42-month total—were attributable to the prosecution. So the state court overstated O'Quinn's responsibility for the delay. But this mistake of fact cannot support habeas relief unless O'Quinn can show that the state court's decision was based on it. *See* § 2254(d)(2) (stating that relief should not be granted unless the proceedings "resulted in a decision that was *based on* an unreasonable determination of the facts in light of the evidence presented in the State court proceeding") (emphasis added); *see also Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011); *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005). Because the continuances requested by O'Quinn's lawyer accounted for almost all of the pretrial delay—about 90% of the total—it cannot reasonably be argued that this modest factual mistake had any meaningful effect on the state court's decision. The factual error had no constitutional significance.

There's no controversy about the third factor in the *Barker* analysis: O'Quinn asserted his right to a speedy trial in two pro se letters objecting to the continuances. The state court correctly accounted for this factor. *O'Quinn*, 791 N.E.2d at 1073.

The fourth and final factor looks to whether the defendant was prejudiced by the delay. *Barker*, 407 U.S. at 532. In this context, prejudice is not limited to effects on a defendant's trial strategy. *Barker* explained that the Sixth Amendment's speedy-trial guarantee protects several interests: (1) it guards against "oppressive pretrial incarceration"; (2) it minimizes the "anxiety and concern of the accused"; and (3) it "limit[s] the possibility that the defense will be impaired." *Id.* But the "most serious [of these] is the last[] because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

The Illinois Appellate Court mentioned the intrinsic dimensions of prejudice, noting that O'Quinn "spent a lengthy amount of time" in pretrial incarceration, which caused "unnecessary anxiety and concern." *O'Quinn*, 791 N.E.2d at 1073–74. But the court's prejudice analysis focused primarily on whether the lengthy delay impaired his defense. *Id.* O'Quinn had argued that the delay prevented him from calling his estranged wife as a witness because she died before trial. The court considered and rejected this argument. The record revealed that O'Quinn's attorney had ruled out the estranged wife as a witness because she would have been decidedly unhelpful to the defense. *Id.* (explaining that the defense attorney had moved to exclude evidence that O'Quinn had been investigated for abusing his estranged wife's children).

O'Quinn doesn't quarrel with the state court's reasoning on this point. He argues instead that the court gave insufficient weight to the presumed prejudice arising from a delay of this length. Although the length of delay both establishes and intensifies the presumption of prejudice, "the presumed

prejudice flowing from a long delay is 'insufficient to carry a speedy trial claim absent a strong showing on the other *Barker* factors.'" *Ashburn v. Korte*, 761 F.3d 741, 753 (7th Cir. 2014) (quoting *United States v. Oriedo*, 498 F.3d 593, 600 (7th Cir. 2007)). A strong showing of prejudice does not appear in this record. As important, the vast majority of the pretrial delay was properly attributed to O'Quinn.

In short, the state court's decision was not an unreasonable application of federal law. As such, habeas relief is unwarranted.

AFFIRMED.